Argued December 23, 1919, affirmed February 3, former opinion approved and rehearing denied March 30, 1920.

# OLDS *v.* HINES.*

(187 Pac. 586; 188 Pac. 716.)

**Trial—Motion for Nonsuit in Effect a Demurrer to Evidence.**

1. A motion for nonsuit is in effect a demurrer to plaintiff's evidence, an objection in purport that it is not sufficient to prove the allegations of the complaint, or to show that the plaintiff was entitled to recover.

**Negligence—Contributory Negligence Question for Court When Only One Conclusion Possible from Evidence.**

2. If there can be no reasonable conclusion other than that plaintiff himself was remiss in his duty at the time of the accident, it is incumbent on the court to so declare and order nonsuit.

**Railroads—Nonsuit Properly Granted for Motor Truck Driver's Failure to Look at Crossing.**

3. Where plaintiff, the driver of a motor truck going two miles per hour, testified that he looked when twelve feet from the track and did not see the approaching train, going thirty miles an hour, though it could have been seen 600 feet away, and did not look again until the front wheels of his truck were on the track with the train forty feet away, it was proper to grant a nonsuit instead of submitting the case to the jury.

**Railroads—Continuous Vigilance Necessary at Crossing.**

4. The duty of vigilance to avoid accident is upon a traveler continuously until he has crossed the track.

**Railroads—Motor Truck Driver not Entitled to Priority at Crossing.**

5. A motor truck driver has no right to claim the priority of passage at a crossing.

[As to accidents to automobiles at railroad crossings, see notes in Ann. Cas. 1913B, 680; Ann. Cas. 1915B, 767.]

**Railroads—Motor Truck Driver's Duty at Crossing Defined.**

6. The law demands of a motor truck driver going over a crossing a higher degree of care in proportion than it does of a pedestrian or a driver of a light vehicle drawn by a single horse.

## ON PETITION FOR REHEARING.

**Appeal and Error—Drawing of an Obvious Conclusion from Admitted Facts is not the Decision of an Issue of Fact.**

7. Where the physical facts were such that at the relative speed of the motor truck which plaintiff was driving and together with

---

*On the question of care required of driver of automobile at railroad crossing, see notes in 21 L. R. A. (N. S.) 794; 29 L. R. A. (N. S.) 924; 46 L. R. A. (N. S.) 702. REPORTER.

the speed of the train he must have seen the train which struck his truck had he looked, the action of the appellate court in so declaring is not open to objection as decision of a question of fact.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1.

The plaintiff, a young man about nineteen years of age, by his guardian *ad litem* in this action sues Walker D. Hines as director-general of the United States Railroad Administration, and Jones and Amundson, the engineer and fireman in charge of a train of the Spokane, Portland & Seattle Railway Company, for damages on account of an injury which he received in a collision between a train on that road and a motor truck which he was operating at the time. The accident occurred in the City of Portland where the railroad track crosses Fifteenth Street. The ground of negligence charged against the defendants is substantially that the train, consisting of a locomotive, tender and three passenger-coaches, was operated at a high, dangerous and reckless rate of speed, namely, at the rate of twenty-five miles an hour; and that the defendants neglected to keep a proper lookout for vehicles crossing on Fifteenth Street, or to warn the plaintiff by ringing a bell or blowing a whistle, or by any other means, of the the approach of the train. It is said substantially in the complaint that the men in charge of the engine could have seen the truck which the plaintiff was driving, as it was approaching and going upon the crossing, had they kept a proper lookout; and that there are no obstructions whatever between the crossing and five hundred feet along the track in the direction from which the engine was coming to the place of collision.

The answers of the several defendants traverse the complaint as to all charges of negligence and assert

that the plaintiff drove his truck upon the track without taking such precautions as a reasonably prudent individual under like circumstances would take to ascertain whether or not there was a train coming. This in turn was traversed by the reply.

At the close of the plaintiff's case the trial court entered a judgment of involuntary nonsuit against the plaintiff and he appeals.     AFFIRMED.

For appellant there was a brief over the names of *Mr. F. M. De Neffe, Mr. Jay Bowerman* and *Mr. Martin L. Pipes,* with an oral argument by *Mr. De Neffe.*

For respondent there was a brief over the names of *Mr. Charles A. Hart* and *Messrs. Carey & Kerr,* with an oral argument by *Mr. Hart.*

BURNETT, J.—A brief *résumé* of the testimony is here set down: Fifteenth, Sixteenth and Seventeenth Streets in Portland run due north and south. The Spokane, Portland & Seattle Railway track on which the accident happened comes from the northwest on a slight curve to the left across these streets. There are some docks situated on the bank of the Willamette River near the foot of Fifteenth Street. The plaintiff was an experienced truckman and quite familiar with the crossing and the surroundings, having driven over the tracks there for about a year before the accident. On the day in question he had gone with a helper to the docks, loaded some heavy lumber upon the truck and started south along Fifteenth Street. There are several railway tracks between the dock and the place of the accident, two of which are main tracks, the one in question and another belonging to the Northern Pacific Railroad Company. The other tracks are

switch lines to various points on the river front. The distance between the Northern Pacific track and that of the Spokane, Portland & Seattle Railway where the accident happened is thirty-five feet. All the way between these tracks there is a clear and unobstructed view along the Spokane, Portland & Seattle track to Seventeenth Street, a distance agreed upon by the parties to be 600 feet. The train which injured the plaintiff was coming from the northwest along the Spokane, Portland & Seattle track toward Fifteenth Street. The plaintiff testified in substance that he was driving the truck very slowly on account of the roughness of the roadway; that he looked and listened twelve or fifteen feet away from the Spokane, Portland & Seattle track; that there was nothing in sight in either direction and that he went ahead. All this time he could see to the Seventeenth Street crossing. He said he was listening continually, was paying all of his attention to his driving, and was just moving. He knew at the time that the track was a main line and had seen main line trains passing on it many times. He was asked this question:

"And, seeing no train when you were twelve or fifteen feet away, then you did not look again, but listened?

"A. I did not look, but I listened. I was putting all my concentration on my driving.

"Q. You were depending on your hearing, and you did not glance up at any time?

"A. No, sir."

He declared there was nothing to prevent his seeing the train if it had been there, and that he could see to the Seventeenth Street crossing. He states in substance that the first he saw of the train was when it was about twenty-five or thirty feet from the truck and at the time the front wheels of his truck were

just about going over the south rail of the track. The witness Carter said that the plaintiff was going not over two miles an hour. Doty, who rode with the plaintiff, thinks the truck was not going so fast as two or three miles an hour, that it was going slowly and could have been stopped instantly. Carter also stated that he saw the train thirty or forty feet from the truck and judged that the engine was going between twenty and thirty miles an hour. Harris first saw the engine before it struck the truck, about 125 feet from the crossing. Lillian Davidson, a typist who sat at an open window in the second story of a canning establishment near the scene of the accident, testified that she had a good view of the situation and first saw the train near the second post from the crossing. By the plat introduced in evidence this post is set down as 191 feet from the crossing. She said the train was going about thirty miles an hour and that when she looked the front end of the truck was just about beginning to go on the track. N. P. Jensen was traveling south, driving a truck on Seventeenth Street. As he approached the track from the north a flagman signaled him to stop when he was about fifteen feet from the track. Instead of stopping immediately as he could at the speed he was traveling, he coasted up to within about five or six feet from the track and halted there. He says that the train passed him immediately, going about twenty-five miles per hour. He explains that he did not wait for the last coach to go by, but as his custom is, as the first coach went by, he started his truck, so that he could pull right on back of the car, to save time. He testifies that when he started to go over the Seventeenth Street crossing, he looked towards Fifteenth Street and saw the Olds truck then about seven or eight feet back from the track. The

witness Yost was seated on his wagon some distance east of the crossing and saw the train coming just prior to the collision, as he says, traveling about thirty miles an hour.

1, 2. A motion for nonsuit is in effect a demurrer to the plaintiff's evidence, an objection in purport that it is not sufficient to prove the allegations of the complaint, or to show that the plaintiff was entitled to recover. It is also true as a rule of law that if the evidence of the plaintiff when fairly judged from the standpoint of a reasonable man shows that he himself was guilty of negligence which contributed to his injury, he cannot recover. We remember also that it is a binding principle that the plaintiff is entitled to the benefit of whatever his testimony tends to prove, although his witnesses may contradict each other, and that if any reasonable construction of the evidence on his behalf, or any part thereof, shall fairly tend to show that he is entitled to recover, it is the duty of the court to submit the question to the jury. On the other hand, if there can be no reasonable conclusion other than that the plaintiff himself was remiss in his duty at the time of the accident, it is incumbent upon the court so to declare, and order a nonsuit. The judge cannot evade his duty by sending such a case to the jury, thus inviting it to render a verdict which would be clearly against the testimony.

3. One of the principal questions in the case is whether or not the train was in sight of the plaintiff in time for him to stop in safety before going upon the track. We must bear in mind that he says he looked both ways along the track, with an unobstructed view as far as Seventeenth Street, a distance of 600 feet, when he was yet twelve or fifteen feet back from the Spokane, Portland & Seattle track, but that he did

not look again until the front wheels of his truck were on the track and the train was within thirty or forty feet of him. The complaint declares that there was no obstruction to the view and that the men in charge of the train could easily have seen the truck Olds was driving as it approached the crossing. Granting this, it is equally true that the plaintiff could just as easily have seen the train approaching. If they were negligent in not seeing him, by the same rule he was negligent in not seeing the train they were operating.

The lowest rate of speed at which the plaintiff was traveling as given in figures by the testimony is two miles per hour. At this rate it would require five seconds for him to travel the fifteen feet to the railroad track. The greatest rate of speed charged to the train by any of the witnesses, most indicative of negligence on the part of the defendants in that respect, is thirty miles per hour. This is at the rate of forty-four feet per second. Thus we have a case where the plaintiff travels five seconds to the point of collision. During that same five seconds the train had traveled at the rate of forty-four feet per second, making a total of 220 feet. This calculation makes it mathematically certain that the train was east of Seventeenth Street, or within the 600 foot space which was in clear view by the plaintiff at all times. This result is corroborated by the testimony of Jensen, who saw the plaintiff's truck seven or eight feet from the crossing after the train had passed him at Seventeenth Street. It is also corroborated by the testimony of Miss Davidson, who first saw the train 191 feet from the crossing, as the front end of the truck was about to go upon the track. The only conclusion to be drawn from the testimony, therefore, is that as a matter of fact the train was plainly visible in the 600 foot space at the

time the plaintiff says he looked in that direction and saw nothing. Does this present a question for the jury and relieve the judge of the responsibility of deciding the case on a motion for nonsuit?

In *Young* v. *Chicago, R. I. & P. Ry. Co.*, 57 Kan. 144 (45 Pac. 583), we have substantially a parallel case. The plaintiff was a young woman twenty-three years of age, driving a one-horse buggy with the top down. The track of the Atchison, Topeka & Santa Fe Railroad and that of the defendant company were about 75 to 100 feet apart.

"She testified that she crossed the Sante Fe track, and knew that the Rock Island train was about due, and when between the two tracks she looked and listened three or four times for the Rock Island train, and the last time, when about ten or fifteen feet from the track, she stopped and looked and listened for the train, but she did not see or hear it, although she saw the whistling-post on the side of the track, eighty rods away. She stated that she was driving in a slow walk, not as much as three or four miles an hour, but the horse and buggy were struck by the train although she had not seen it at all."

The undisputed fact was, as disclosed by her own evidence, that the train was in very truth there on the track where it struck her. The court said:

"If several minds might reasonably arrive at different conclusions respecting the question of reasonable care of the plaintiff in crossing the track, then the case ought to have been submitted to the jury; but this is not such a case."

The court then quoted from *Artz* v. *Railroad Co.*, 34 Iowa, 153, thus:

"It is urged by the appellee's counsel that the plaintiff testifies that he did both look and listen to see and hear the train; but did not; and that this testimony shows that he was not guilty of contributory

negligence, or, at the very least, it made that a question of fact for the jury. The difficulty, however, with the position is that, the conceded or undisputed facts being true, this testimony cannot, in the very nature of things, be also true. It constitutes, therefore, no conflict.''

*Railway Co.* v. *Elliott,* 28 Ohio St. 340, 355, says:

''It is nothing to the purpose that he should say he looked this way and that, when the object he seeks to discover is plainly and palpably before him, and he fails to see it. Either his statement is not true or his exercise of vision was such as to be not only negligent, but culpable.''

In *Railway Co.* v. *Hedges,* 118 Ind. 5, 11 (20 N. E. 530, 533), it is said:

''The law presumes that one having the ordinary sense of sight must have seen that which was within the range of his vision, if he gave attention and looked; and if he saw the train approaching, and pursued his way notwithstanding, he is to be regarded as taking the risk upon himself.''

Other cases to the same effect are *Kelsay* v. *Railroad Co.,* 129 Mo. 362 (30 S. W. 339); *Lake Erie & W. Ry. Co.* v. *Stick,* 143 Ind. 449 (41 N. E. 365); *Bornscheuer* v. *Consolidated Traction Co.,* 198 Pa. 332 (47 Atl. 872); *Payne* v. *Chicago & A. R. R. Co.,* 136 Mo. 562 (38 S. W. 308); *Hudson* v. *Rome etc. Ry. Co.,* 145 N. Y. 408 (40 N. E. 8); *Medcalf* v. *St. Paul City Ry.,* 82 Minn. 18 (84 N. W. 633); *Hunter* v. *New York etc. Ry.,* 116 N. Y. 615 (23 N. E. 9, 6 L. R. A. 246).

In *Wolf* v. *City Ry. Co.,* 50 Or. 64 (85 Pac. 620, 91 Pac. 460, 15 Ann. Cas. 1181, 50 Am. & Eng. R. R. Cas. (N. S.) 213), this court, speaking by Mr. Justice MOORE, approved the doctrine that:

''Where the undisputed circumstances show that the testimony of a witness is so impossible or unreasonable

that a fair mind must reject it, the court must withdraw such testimony from the jury.''

It is true that in that case the opinion goes on to show that the testimony there involved is not within the rule, but the precept itself is the doctrine of this court. The Wolf case is annotated at length in 15 Ann. Cas. and a great wealth of authority is cited to this point, that where a train was in fact in plain sight, the testimony of a witness to the effect that he looked but saw no train is incredible and presents no isue to be submitted to the jury. In other words, under such circumstances the testimony is to be treated as if the witness had not looked at all, when he had opportunity and should have looked. This distinguishes the present case from *Hecker* v. *Railroad Co.,* 40 Or. 6 (66 Pac. 270, 23 Am. & Eng. R. R. Cas. (N. S.) 33), which is relied upon by the plaintiff. The substance of the doctrine there taught is that the law does not lay down as a hard-and-fast rule that the injured individual shall have looked at any particular distance from the track. In that case the testimony shows that the traveler was engaged at the very time in both looking and listening for the coming of a train. The track was partially obscured in both directions. The plaintiff had just looked towards the east without seeing any train and had begun to look westward along the track when the train from the east caught him. The court held this to be sufficient to take the issue to the jury. Here, although ''crawling'' along, as the plaintiff says, when he could stop instantly, he suspended looking and did not look the second time until he had got into the zone of absolute danger. The circumstance that the train, according to the mathematics of the situation, was in very truth in plain sight of him at all times, compels the construction of his testimony to the effect that he

either did see it in fact, or so negligently used his vision as to make him culpable in bringing on the collision. It is almost a platitude to say that in such cases a party is bound by what he actually saw or by the exercise of ordinary prudence could have seen; or, as stated in *Southern Ry. Co.* v. *Jones,* 106 Va. 412 (56 S. E. 155):

"If there is any point at which, by looking and listening, a person injured could have avoided the accident, and he failed to do so, then his contributory negligence defeats a recovery for the injury. If he could have seen and did not see an approaching train, then he failed to discharge the duty which the law imposes."

4, 6. If the trainmen could have seen the plaintiff, as he says they could, equally well could the plaintiff have seen the train. In crossing a railroad track, itself intrinsically a place of danger, the duty of vigilance to avoid accidents is incumbent upon the traveler continuously until the danger is past; that is to say, until he has crossed the track. For the reason that the train has the right of way and must have it in order properly to conserve the safety and convenience of the traveling public, the truck driver has no right to claim priority of passage. His own vehicle is self-propelled and controllable within very narrow limits. Its collision with a train is fraught with danger to many people. Accordingly, the law demands of the truck driver a higher degree of care in proportion than it does of the pedestrian or the driver of a light vehicle drawn by a single horse. In effect, by his complaint the plaintiff demands that because the trainmen might have seen him and ought to have seen him in plain view, it was their duty to give him priority of passage. This is not the law.

We have purposely avoided considering whether or not the defendants were negligent. We dismiss that

feature by saying that there was evidence sufficient to take that branch of the case to the jury. The case is decided upon the principle that the admitted facts plainly and mathematically contradict the bare statement of the plaintiff that he looked and saw nothing, and practically demonstrate contributory negligence on his part preventing his recovery. The trial judge saw his legal duty in the premises and had the courage to perform it, instead of passing it to the jury. His action is approved and the judgment affirmed.

AFFIRMED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.

---

Former opinion approved and rehearing denied March 30, 1920.

PETITION FOR REHEARING.

(188 Pac. 716.)

Department 1.

On petition for rehearing. Former opinion approved and rehearing denied.

AFFIRMED.   REHEARING DENIED.

*Mr. F. M. De Neffe, Mr. Jay Bowerman* and *Mr. Martin L. Pipes*, for the petition.

*Messrs. Carey & Kerr* and *Mr. Charles A. Hart*, contra.

BURNETT, J.—The burden of the plaintiff's contention in his petition for rehearing is that the former opinion undertook to control the testimony of the plaintiff himself by the testimony of other witnesses as to the

visibility of the train before it struck the plaintiff, and
that thereby the court assumed to decide a question
of fact.  The only object in reciting the declarations of
the witnesses was to verify the conclusions reached
from an analysis of the plaintiff's own testimony.
Neither does the opinion intimate that the plaintiff was
bound to prove his freedom from negligence.

The design of the former opinion in computing the
situation of the train was to assume as a hypothesis
the figures most favorable to the plaintiff as disclosed
by the testimony.  It will be remembered that some
witnesses gave figures in their estimate of the speed of
the truck and of the train.  There was testimony, of
course, that the truck was not moving so fast as two
or three miles per hour, but its lowest actual figured
rate given was two miles per hour.  On the other hand,
the most rapid speed of the train as stated in the tes-
timony, that at which it would most likely come upon
the plaintiff unawares, was thirty miles per hour.
Analyzing the plaintiff's statement that there was no
train on the 600 feet of track over which he had un-
obstructed vision when he looked at 15 feet from the
rails, we find that at 30 miles per hour the train would
occupy 13.63 seconds in traversing that 600 feet to the
point of collision.  In that same 13.63 seconds in trav-
eling at 2 miles per hour the truck would cover 39.52
feet, whereas it was only 15 feet to the rails, and the
plaintiff's statement is that the locomotive struck the
front wheels of his truck, slued it around and carried
it along, leaving it substantially parallel with the track,
about 25 feet from the crossing.  If we increase the
speed of the truck to 3 miles per hour it would carry
it 59.97 feet while the train traveled the 600 feet at
30 miles per hour.  In other words, at that rate the

truck would have cleared the crossing before the arrival there of the train.

Bearing in mind that thus far we are dealing with the figures given in the testimony for the plaintiff and in the most favorable construction of them on behalf of the plaintiff, the conclusion is mathematically inevitable that the train was in the 600 feet open space and visible to the plaintiff, if he had glanced in that direction at any time immediately before he came upon the track. His own testimony is that he did not look again after looking at 15 feet from the rails, until his fore wheels were between the rails. It is undisputed that the locomotive struck him. This could not have happened unless the train was there. If we decrease the speed of either the truck or the train or of both of them, it makes it all the worse for the plaintiff's case, because it lengthens the time during which he says he did not look, thus intensifying his negligence. No reasonable man can rightfully say that the train could have traversed the 600 feet of open view without plaintiff's seeing it if he had looked, and that if he was barely moving as he says, he could not have stopped in time to let the train pass in safety to himself.

*Stafford* v. *Chippewa Valley Electric R. Co.,* 110 Wis. 331 (85 N. W. 1036), is substantially a parallel case except that the plaintiff was traveling in a horse-drawn vehicle. The court there said:

"The idea that the car moved from a point where it was out of sight from plaintiff's point of view when she looked, to where it was when the horses became frightened, a distance of some 275 feet, while the horses traveled but about 20 feet, making the speed of the car somewhere about 50 miles per hour or twice as great as the most extravagant testimony of plaintiff's witnesses puts it, is as well within the bounds of the ridiculous, we venture to say, as anything that has heretofore

received serious consideration by a trial court or jury.
* * Either the observation was not taken and the testimony to the contrary is false, or the car was seen and the testimony the other way is false, and the accident occurred in the driver of the horses attempting to cross the track regardless of the danger, depending upon the vigilance of the motorman to stop his car before reaching the wagon. * * It should be kept clearly in mind that courts and juries go beyond their legitimate sphere by deciding that a fact exists which is contrary to all reasonable probabilities, and that such is the case no matter how many witnesses testify to the existence of such facts. The testimony of the plaintiff that she looked for a coming car when it must have been plainly in view, yet did not see it, cannot be true consistent with possession by her at the time with the capacity for seeing, as to which there is no question.''

We quote from the petition for rehearing in the case at bar:

''We do not mean to deny the rule established by the cases cited by the court that, if the physical fact exists and the object looked for is in fact in plain sight, the plaintiff will not be heard to say that he did not see it. * * In such cases the courts hold that there is no conflict of fact in the case, since the laws of nature are facts which must be accepted, human testimony to the contrary notwithstanding. But in order to apply that rule the physical fact relied on to discredit plaintiff's evidence and the evidence of his own eyes, must be a fact uncontroverted by him and incontrovertible by him. * * It must be conceded, stipulated, admitted by the plaintiff himself, or deduced inevitably from facts which he admits or swears to. There is, then, a clear distinction between a case where the plaintiff swears he did not see a train which *his own testimony shows was there,* and a case where the plaintiff swears he did not see the train because it was not there in fact.''

The only reasonable deduction from the phenomena described by the plaintiff is that the train was there in

plain sight. . If it was not, he would not have been hurt.

Commenting on the quotation from *Wolf* v. *City Ry. Co.*, 50 Or. 64 (85 Pac. 620, 91 Pac. 460, 15 Ann. Cas. 1181, 50 Am. & Eng. R. R. Cas. (N. S.) 213), here set down:

"Where the undisputed circumstances show that the testimony of a witness is so impossible or unreasonable that a fair mind must reject it, the court must withdraw such testimony from the jury,"

—the petition intimates that the former opinion overlooked the word "undisputed" in the excerpt. In this critique counsel have failed to distinguish between "undisputed circumstances" and impossible oral declarations. The undisputed circumstances in the instant case are that the plaintiff was approaching a track where the view was unobstructed for 600 feet; that he did not look after passing a certain point; and that the train came along the track and struck him. It is utterly unreasonable and contrary to the very facts upon which he relies for recovery, to say that the train was not in sight. Such oral declarations, when compared with the actual, admitted physical happenings present in the case, are nullities and are to be treated as if they had not been uttered.

In arriving at this result we have not opposed witness against witness or decided a question of fact. We have only pointed out the reason inherent in the plaintiff's own statement, taken altogether, why his oral declaration that there was no train in sight cannot possibly be true when compared with the "undisputed circumstances" upon which his case depends. As to the rate of speed of his truck which was taken as a basis of calculation, it was one of those named in the testimony, and the aim was to demonstrate that

at that rate the train must have been in sight at the time the plaintiff last looked for it, and that this would be true no matter how much slower he traveled. Any greater speed indicated by the testimony would have taken him across the track ahead of the train.

The only reasonable conclusion to be drawn from the testimony, giving it the strongest possible effect for the plaintiff, is a dilemma: On the one hand, he looked and did not see the train plainly visible upon the track; or, on the other, having looked, he dawdled on his way to the track or "barely crawled" as he says, without looking, so that the train came upon him when he might have stopped instantly at any time before he reached the track if he had looked as he ought. *"Incidis in Scyllam cupiens vitare Charybdim."*

The petition for rehearing is denied.

                    AFFIRMED.   REHEARING DENIED.

McBRIDE, C. J., and BENSON and HARRIS, JJ., concur.