Argued January 28, affirmed March 9, 1920.

CITY OF PENDLETON, for Use and Benefit of OREGON LUMBER YARD, v. JEFFERY & BUFTON et al.

(188 Pac. 176.)

**Sales—Material to be Paid for on Delivery.**

1. In absence of allegation and proof of a contrary stipulation, it will be assumed that building material was to be paid for on delivery.

**Municipal Corporations—Contractor Required to "Promptly" Make Payments to Pay Bills at Maturity.**

2. Under Section 6266, L. O. L., requiring contractors on public contracts to "promptly" pay materialmen, a contractor's surety was obligated to pay such bills at their maturity.

**Principal and Surety—Contractor's Surety Liable for Interest.**

3. Under Section 6266, L. O. L., requiring contractors to promptly pay materialmen, and Section 6028, fixing the interest rate upon balances due on matured accounts, a contractor's surety is liable for interest on amounts due the materialmen between the date material was furnished and the date the materialmen and contractor agreed upon the balance due.

Municipal Corporations—Action for Account Stated may be Maintained Against Contractor's Surety.

4. Under Section 6266, L. O. L., giving a municipality a right of action for the benefit of a materialman against a contractor and his sureties, the fact that complaint alleges an account stated between the contractor and materialman is not objectionable, where such account was merely an agreement as to the amount due for materials.

Municipal Corporations—Materialman's Efforts to Collect Debt did not Release Contractor's Surety.

5. A materialman's efforts to collect the amount due from the contractor by prosecuting the contractor's claim against the owner, foreclosing a mortgage assigned to it by the contractor, etc., *held* not to release the contractors's surety from liability under Section 6266, L. O. L., for the remaining balance, where it had been kept informed of the materialman's efforts to collect the debt.

From Multnomah: GEORGE G. BINGHAM, Judge.

Department 2.

This is an action brought under Section 6266, L. O. L., by the City of Pendleton, a municipal corporation, for the use and benefit of the Oregon Lumber Yard, an Oregon corporation, with principal office at Pendleton, against Jeffery & Bufton, another Oregon corporation, with principal office in Portland, and the American Surety Company of New York, a New York corporation, with an office in the City of Portland, and duly licensed under the laws of Oregon to become surety on bonds and undertakings in this state. On September 11, 1912, the defendant Jeffery & Bufton entered into a contract with the water commission of the City of Pendleton to furnish the necessary labor and materials for distributing reservoirs for that municipality in accord with certain plans and specifications. To insure the performance of the contract and under the provisions of Section 6266, L. O. L., Jeffery & Bufton, as principal, and the Surety Company for a valuable consideration to it paid, executed to the water commission of Pendleton a penal bond in the sum of $7,500, conditioned as follows:

"If the said Jeffery and Bufton shall well and faithfully perform all of the provisions and conditions by them to be performed, in the manner and within the time set forth, and shall pay all laborers, mechanics, subcontractors and materialmen and all persons who shall supply said principal, or any subcontractor with provisions or supplies for the carrying out of said work, all just debts, dues and demands in the performance of said work, * * then this obligation shall be void, but otherwise to remain in full force and effect."

Copies of the plans and specifications, contracts and bonds are attached to and made a part of the complaint. Pursuant thereto, Jeffery & Bufton commenced work under the contract and between September 23, 1913, and March 7, 1914, the Oregon Lumber Yard furnished and delivered to that defendant, at its special instance and request, certain lumber, sand, cement, gravel and other materials to be used, and which were actually used in the construction of the reservoirs. On August 12, 1914, the parties had an accounting thereof between themselves, in which it was found and agreed that on account thereof there was a balance of $3,675.71 due and owing from Jeffery & Bufton to the Oregon Lumber Yard. It is then alleged that no part thereof has been paid, except the sum of $1,120 on September 13, 1915, and that, including accrued interest, there is now due and owing the sum of $2,725.93 with interest thereon from the date last mentioned at the rate of 6 per cent per annum.

Like allegations are made as to a second cause of action upon another contract for the construction of a waterworks conduit, upon which a bond was furnished in the sum of $6,000. As to that contract it is then alleged that on August 12, 1914, there was another accounting, in which it was ascertained and agreed

that there was due and owing from Jeffery & Bufton to the Oregon Lumber Yard a balance of $6,771.64, upon which $5,985.85 was paid September 13, 1915, and that with accrued interest there was due and owing $1,200.26, with interest at 6 per cent per annum from September 13, 1915, for which the plaintiff prayed judgment against the defendants.

It is charged in the complaint that the Surety Company knew and approved of the settlements and accounting; that prior to the action, the Oregon Lumber Yard filed its claim with the Surety Company, and that the latter has failed, neglected and refused to pay any part thereof.

For answer to each cause of action the Surety Company admits the existence of the corporations as alleged, and the execution of the bonds under the terms and provisions of Section 6266, L. O. L., but denies knowledge of any accounting or agreement as to the balance due on the contract or the filing of any claim or demand for payment. For further and separate defense this defendant alleges that on August 12, 1914, Jeffery & Bufton executed three certain promissory notes to the Oregon Lumber Yard, aggregating $10,-407.35, and a warranty deed of lots 9, 10 and 12 in block 4 of Murphy's Addition to East Portland, to one A. H. Cox, together with an absolute assignment of all its claims against the City of Pendleton; that such notes, deed and assignment were executed, taken and accepted in full payment and satisfaction of the claims and demands of the Oregon Lumber Yard against Jeffery & Bufton; that the Surety Company had no knowledge or information of such transactions, and did not assent to or take any part therein; and that such acts and facts constitute a novation and operate as a release and discharge of the Surety Company from

all liability upon its bonds.   The Surety Company further pleads the institution of a suit against Jeffery & Bufton to foreclose the deed as a mortgage, the resulting decree therefor, and the advertising of the property for sale under the decree.

The plaintiff denies all the material allegations of the further and separate answer, and in replying alleges that it was understood and agreed that the notes referred to should be held by Oregon Lumber Yard as security for any amount due it from Jeffery & Bufton; that any proceeds should be credited thereon, and in the event that such notes were paid they were to be canceled and returned to the maker; that such deed and notes were to be deemed as additional security; and that prior to the commencement of the suit the Oregon Lumber Yard tendered them to the Surety Company and demanded payment of the amounts due by reason of such transactions; and that the action was commenced against the City of Pendleton on the assigned claims, which was afterwards settled and the proceeds applied *pro tanto* on claims against Jeffery & Bufton.   The plaintiff further avers that in substance all of such suits, proceedings and actions were had and taken for the use and benefit of Jeffery & Bufton and the Surety Company, with the full knowledge, consent and approval of the latter and for its protection.

The trial court made findings of fact supporting the allegations of the complaint and plaintiff's further and separate reply, and found that there was due and owing from the defendants to the plaintiff $4,022.29, with interest from September 13, 1915, at 6 per cent per annum, for which amount a decree was rendered.   The Surety Company alone appeals.          AFFIRMED.

For appellant there was a brief and an oral argument by *Mr. John K. Kollock.*

For respondent there was a brief with oral arguments by *Mr. William D. Fenton* and *Mr. Harry L. Rafferty.*

JOHNS, J.—While Section 6266, L. O. L., provides that a bond shall be given to the effect that the contractor "shall promptly make payments to all persons supplying him or them labor or materials for any prosecution of the work provided for in such contracts," it will be noted that in the instant case the bond provides that the contractor—

"Shall pay all laborers, mechanics, subcontractors and materialmen and all persons who shall supply said principal, or any subcontractor with provisions or supplies for the carrying out of said work, all just debts, dues and demands in the performance of said work."

While that is true, the answer admits the bond as alleged, and that it was executed "in compliance with Section 6266, L. O. L., for the purpose of protecting all materialmen, subcontractors, laborers and mechanics performing labor and furnishing material in and on account of said work," and that it was executed for a valuable consideration.

The testimony is conclusive—in fact, it is not disputed—that the Oregon Lumber Yard did furnish and deliver to Jeffery & Bufton supplies and material to be used, and which were used, in the construction of the distributing reservoirs and conduits under its contract with the City of Pendleton, and that Jeffery & Bufton promised and agreed to pay the Oregon Lumber Yard the full amount of its claims, including the interest. The testimony is also conclusive that on August 12, 1914, there was a settlement between the

Oregon Lumber Yard and Jeffery & Bufton, by which it was then agreed that there was due and owing from Jeffery & Bufton to the Oregon Lumber Yard the sum of $6,771.64 upon one contract and $3,675.51 upon the other, for and on account of materials and supplies which were used by Jeffery & Bufton in its contract with the City of Pendleton. It is claimed by the appellant, and the testimony tends to show, that the settlement includes an item of $154 as interest, and it is vigorously contended that the plaintiff is not entitled to recover any interest from the defendant Surety Company prior to the rendition of the decree—citing and relying on the case of *Sargent* v. *American Bank & Trust Co.*, 80 Or. 16, at page 41 (156 Pac. 431).

1, 2. Section 6266, under which the action was brought, provides that the "contractor shall promptly make payments to all persons," etc., and it appears from the evidence that the material was delivered continuously between the 24th of September, 1913, and the eighth day of March, 1914. In the absence of allegation and proof we must assume that as between purchaser and seller the material was to be paid for upon its delivery, and as between the Oregon Lumber Yard and the American Surety Company the statute provides that the "contractors shall promptly make payments."

In Words & Phrases, Vol. 6, page 5684, it is said the word "promptly" as used in a lease providing that the taxes should be paid was meant to emphasize that the taxes would be paid as soon as they became due. Certain it is that the word "promptly" means something more definite and covers a shorter time than a reasonable time. "Promptly" is defined as "quickly" or "expeditiously," so that an instruction that a city was chargeable with the duty to promptly repair an

alleged defect in a street is erroneous, as the city is responsible only for a reasonable diligence, and "reasonable diligence" is not equivalent to "promptly." To guarantee "full and prompt payment" would mean, in the case of a note payable at some bank, the time it was actually to be paid in full at maturity.

We hold that Section 6266 should be construed to mean that such surety should pay all bills for lumber and material at their maturity. There is no dispute as to the amount of the purchase price of the materials, or as to any of the payments, and the statutory bond provides that all claims for labor and material shall be promptly paid. The purchases commenced on September 24, 1913, and were completed on March 8, 1914. The settlement between the Oregon Lumber Yard and Jeffery & Bufton was made on August 12, 1914. More than five months intervened between the date of the last delivery and the settlement, and Jeffery & Bufton then agreed upon the amount which it owed the Oregon Lumber Yard. There is no claim or pretense that it was not a *bona fide* settlement.

3. Section 6028, L. O. L., provides that—

"The rate of interest in this state shall be 6 per cent per annum * * on money due upon the settlement of matured accounts from the day the balance is ascertained."

It was a matured account, and as between Jeffery & Bufton and the Oregon Lumber Yard the balance was ascertained on the twelfth day of August, 1914. It involved the mutual dealings of many thousands of dollars and covered a period of about eighteen months, during all of which time the Surety Company was in touch with the situation, and was kept fully advised of actual conditions, and never made any protest or objection until its answer was filed. The case was

tried by the court without a jury, which found as a fact that the settlement and accounting—

"Was known to the managing officer of the defendant, American Surety Co. of New York, very shortly after August 12, 1914, and was not objected to by such managing officer or such company."

While it is not clear or positive, there is evidence to support that finding, and it is as binding upon this court as the verdict of a jury. There is a marked difference between the facts in this case and that of *Sargent* v. *American Bank & Trust Co.*, 80 Or. 16 (154 Pac. 759, 156 Pac. 431), and for such reason that case is not in point.

4. Appellant also contends that the complaint states a cause of action on an account stated, and that the plaintiff cannot recover in that form of an action on a bond executed pursuant to Section 6266. That section provides that the plaintiff shall have a right of action for the use and benefit of the Oregon Lumber Yard "against said contractor and sureties, and to prosecute the same to final judgment and execution." It does not specify or define the form or what kind of an action shall be brought. As we construe the complaint, the plaintiff seeks to recover the purchase price of materials which were furnished and delivered and used in the construction of the waterworks system at Pendleton, and while it is true that the complaint alleges that there was a settlement and an agreement as to the amount which was due and owing the Oregon Lumber Yard on account of such purchases, such allegations are statements of facts tending to show that the claims are just and founded upon an agreement between the parties.

5. It is further contended that the Oregon Lumber Yard was vested with full control of the litigation

against the City of Pendleton, and that the assignment of the claims operated as a bar to any action by Oregon Lumber Yard against Jeffery & Bufton, and that by reason thereof the American Surety Company was released, and that the contract of May 1, 1915, substituting new promissory notes was a novation. Exclusive of the writings the testimony is very meager. The trial court found that the suit to foreclose the mortgage "was instituted and prosecuted to a decree with the full knowledge and consent of the defendant, the American Surety Co. of New York," and finding No. 7 is as follows:

"Prior to the twelfth day of August, 1914, the Oregon Lumber Yard furnished to the defendant the American Surety Co. of New York a statement of its account with said Jeffery & Bufton for materials furnished for such reservoirs and conduit, and from that time until the commencement of this action it counseled with and it advised with the American Surety Co. of New York concerning the various means that might be taken to obtain payment of the amount due the Oregon Lumber Yard, and the American Surety Co. of New York did not object or protest against any of the means used by the Oregon Lumber Yard to secure the amount of money due to it, but, on the contrary, advised the Oregon Lumber Yard to continue to use its best endeavors to collect from said Jeffery & Bufton. The defendant American Surety Co. of New York has not been injured or prejudiced in any manner by the various things that have been done by the Oregon Lumber Yard in its endeavors to collect the money so due to it, but, on the contrary, it has been directly benefited thereby."

The trial court also found that the action of the Oregon Lumber Yard against the City of Pendleton was brought for the use and benefit of Jeffery & Bufton, and was at all times under its direction and control, and was compromised and settled by and with its ad-

vice, and that the moneys received therefrom were credited on the balance due the Oregon Lumber Yard on or before September 13, 1915.

We are convinced that it was never the purpose or intent of the Oregon Lumber Yard to release or discharge the American Surety Company from its liability on the bonds; that the Surety Company was at all times in touch with the situation and the actual facts; that the Oregon Lumber Yard was acting in good faith to obtain from Jeffery & Bufton all of the money which it could obtain upon the payment of its claim; and that as a net result of the assignment of the claims against the City of Pendleton, on September 13, 1915, there was collected and credited on the account against Jeffery & Bufton $1,120 upon one contract and $5,-985.85 upon the other, and the gross claim was reduced $7,105.85, and in legal effect this was a reduction of the claim against the Surety Company. That amount was the net proceeds found due and owing Jeffery & Bufton, in a settlement between all the parties after the suit was brought, on its claim against the city. There is no claim or pretense that there was any fraud in the settlement, or that it was not for the best interests of all parties concerned. In *Black* v. *Sippy,* 15 Or. 575 (16 Pac. 419), this court through Chief Justice Lord said:

"Nothing is better settled than that accepting a note is not payment of an account, nor is accepting one note in renewal of another payment of the old note, unless there is an agreement that the note should be accepted in payment."

In *Rimer* v. *Southwestern Surety Ins. Co.,* 85 Or. 293, 299 (165 Pac. 684, 686), it is said:

"The general rule adopted in most jurisdictions, and followed by this court, is that the delivery and acceptance of a note does not extinguish the original indebt-

edness, unless the parties agreed to give and accept the note as absolute payment.''

In the last opinion all of the Oregon decisions on that question are collated and cited. In the instant case there is no evidence that the promissory notes were taken or intended to be taken in payment or satisfaction of the primary debt.

The taking of the collateral security did not release the Surety Company. As a matter of fact it was taken for its use and benefit. In so far as the claim of the Oregon Lumber Yard against Jeffery & Bufton was paid or secured, it operated as a reduction *pro tanto* or as security of its claim against the Surety Company.

The obligation of the Surety Company was to promptly pay for the material which was sold and delivered. This was not done. The Oregon Lumber Yard, in good faith and so far as it was possible, undertook to and did reduce its claim against Jeffery & Bufton, and by reason thereof minimized the amount of its demand against the Surety Company, which knew and was fully advised as to what was done and received the full benefit of its efforts. Exclusive of interest there is no claim or pretense that the claim of the Oregon Lumber Yard is not a just debt, or that the amount found due or owing at the time of the settlement was not a just claim. As stated, this is an action at law, tried by the court without a jury, which made findings of fact sustaining the allegations which were made in the complaint and the further and separate reply.

After careful examination of all the questions ably discussed by counsel, we are convinced that the judgment of the lower court was right, and should be affirmed.                                          AFFIRMED.

McBRIDE, C. J., and BEAN and BENNETT, JJ., concur.