Argued October 17, 1930; reversed June 16; rehearing denied
July 14, 1931.

## CONN *v.* OREGON ELECTRIC RY. CO.

(300 P. 342)

*Fletcher Rockwood,* of Portland (Charles A. Hart
and Carey & Kerr, all of Portland, on the brief), for
appellant.

*Leo J. Hanley,* of Portland (Prescott W. Cooking-
ham, of Portland, on the brief), for respondent.

■ BROWN, J. The first assignment of error relates to the ruling of the court on plaintiff's demurrer to defendant's second separate answer and defense, wherein the judgment of the trial court in a former action was pleaded as a bar.

Turning to our Code, we read:

"A judgment of nonsuit may be given against the plaintiff * * * on motion of the defendant * * * when, upon the trial, the plaintiff fails to prove a cause sufficient to be submitted to the jury": Oregon Code 1930, § 2-1001.

It further provides:

"When a judgment of nonsuit is given, the action is dismissed; but such judgment shall not have the effect to bar another action for the same cause": Oregon Code 1930, § 2-1004.

It is obvious from the record that the judgment invoked by the defendant is not such a judgment as would constitute a bar to the prosecution of this action. By defendant's own pleading we learn that "judgment of nonsuit was entered by the court," and, as to the effect of that judgment, our Code governs. It says, in plain language, that "such judgment shall not have the effect to bar another action for the same cause." See, also, *Carroll v. Grande Ronde Electric Co.,* 49 Or. 477 (90 P. 903). For a valuable exposition of this question, see *Coit v. Beard,* 33 Barb. (N. Y.) 357.

The defendant next assigns error of the court in denying its motion for a directed verdict in its favor, and invokes the much-announced general rule that a person who drives an automobile upon a grade crossing without looking or listening for an oncoming train is guilty of contributory negligence as a matter of law, citing, in support thereof, the following cases: *Long v. Pac. Ry. & Nav. Co.,* 74 Or. 502 (144 P. 462, 145 P. 1068, L. R. A., 1915F, 1151); *Cathcart v. Oregon-W. R. & N. Co.,* 86 Or. 250 (168 P. 308); *Robison v. Oregon-W. R. & N. Co.,* 90 Or. 490 (176 P. 594); *Olds v. Hines,* 95 Or. 580 (187 P. 586, 188 P. 716); *Morser v. Southern Pac. Co.,* 110 Or. 9 (222 P. 736, 124 Or. 384, 262 P. 252). To these authorities, we add the case of *Gomulkiewicz v. Spokane, P. & S. Co.,* 131 Or. 175 (and collection of Oregon cases on page 178), 281 P. 851.

The plaintiff admits the general rule as declared above, but contends that this rule has no application where the railroad is not disclosed to view, and cites numerous authorities in support of his contention. He contends that the cause at issue comes under an exception to the rule, which, in substance, is that a traveler about to cross a railroad track upon a public

crossing is not guilty of contributory negligence for failing to take precautions against a danger not open to observation, and of which he is ignorant: *Chicago, R. I. & P. Ry. Co. v. Hansen,* 78 Kan. 278 (96 P. 668).

We will here review a few of the many additional cases we have read wherein the traveler is held guiltless of contributory negligence in failing to take precautions against an unknown and unseen danger.

The case of *Lawrence v. Southern Pac. Co.,* 189 Cal. 434 (208 P. 966), was an action for death at a spur track crossing. As to whether the decedent knew, or in reason should have known, that he was approaching a railroad crossing, there was sharp conflict in the evidence. But there was evidence showing, among other things, "that there was no sign or other visible warning to indicate the existence of a track or railroad crossing at the point of the accident, and that the track itself was so concealed by the earth along and between its rails as not to be visible or at least to be easily observed by those approaching it along Orange avenue." In its decision the court held that, under such conditions, the question of contributory negligence of decedent in driving his motor car upon the track without stopping, looking, and listening for approaching trains was one to be submitted to the jury.

In *Davidson v. Seaboard Air Line Ry.,* 170 N. C. 281 (87 S. E. 35), the defendant did not contend that there was no evidence of negligence, but insisted that, on the evidence adduced by the plaintiff, his intestate was guilty of contributory negligence, in that she was killed upon a public crossing, and that she entered thereon without looking and listening. With respect to that contention, the court said:

"The rule prevails very generally and is firmly established in our law that it is the duty of a traveler,

whether on foot or in some vehicle, to look and listen before entering upon a railroad crossing, and that his failure to do so is negligence, which will bar a recovery if it is the proximate cause of an injury or death, but this duty is not always an absolute one, and may be qualified by attendant circumstances: *Sherrill v. Railroad,* 140 N. C. 252 (52 S. E. 940); *Talley v. Railroad,* 163 N. C. 571 (80 S. E. 44 [L. R. A. 1918E, 443]); *Fann v. Railroad,* 155 N. C. 141 (71 S. E. 81); *Johnson v. Railroad,* 163 N. C. 443 (79 S. E. 690, Ann. Cas. 1915B, 598).

"In the last of these cases, after stating the rule that it is the duty of a traveler to look and listen, the court says:

" 'The duty of the traveler arising under this rule is not always an absolute one, but may be so qualified by attendant circumstances as to require the issue as to his contributory negligence, by not taking proper measures for his safety, to be submitted to the jury.'

\*　　\*　　\*　　\*　　\*

"And again (in 33 Cyc.), p. 1007:

" 'A traveler's knowledge or familiarity with the railroad crossing and his knowledge of the schedule of the approach of trains have an important bearing on the question of his contributory negligence. So it may be contributory negligence for him to go on a crossing with which he is familiar without looking or listening for approaching trains, when, under similar circumstances, it would not be contributory negligence for a person who is a stranger to the crossing to do so.' "

In *Horandt v. Central R. Co. of New Jersey,* 78 N. J. Law 190 (73 Atl. 93), the supreme court of New Jersey declared the rule relating to the duty of travelers in approaching a railroad crossing as follows:

"A traveler on a highway approaching a railroad crossing is not relieved from the responsibility of looking and listening for trains by reason of his ignorance

of the existence of such crossing, if the presence of the railroad is obvious to any one reasonably using his ordinary powers of observation'': Par. 4, Syl.

In the case of *Harwood v. Missouri Pac. R. Co.,* 118 Kan. 332 (234 P. 990, 40 A. L. R. 1305), the rule is stated in the following language:

"If there is nothing at the place to indicate the presence of a railroad track or warn him of the existence of danger and it is unknown to him, there is no room for the application of the rule. It is the duty of the driver of an automobile to keep a lookout ahead for possible dangers, and if he does so he will ordinarily see a railroad track which passes across a highway. But, if the track is not open to view, it can not be regarded as a warning of danger. Every one is required to use his faculties to discover a visible danger, and cannot escape the effects of his negligence in voluntarily and unnecessarily encountering a known danger. But, if the danger is not visible or known, it can not be said as a matter of law that one encountering it is guilty of contributory negligence.

"* * * He [plaintiff] had never been over the road before, and while he was keeping a lookout ahead, he did not see track or rails, and was unaware of the presence of the railroad until he was upon it. The day was misty and a slight rain was falling, which made it more difficult to see the railroad. The jury found that the plaintiff was keeping a lookout ahead as he traveled towards the crossing; that the mud, weeds, and the absence of a crossing sign prevented him from discovering the railroad in time to have avoided the accident. There was conflicting testimony on these questions, but there was a sufficient basis for the findings of the jury. It was its province to settle the conflicts, and hence we cannot say that the railroad track was open to view, or that plaintiff should have seen it in time to have avoided the accident."

The court held that the rule to stop, look and listen had no application to cases where the crossing is not

visible to the traveler and he is not aware of its existence, and, in support of its position, quoted from *Chicago & E. R. Co. v. Fretz,* 173 Ind. 519 (90 N. E. 76), where it was said:

"If the presence of the crossing is unknown, and there is nothing to indicate its presence, and it cannot be seen, there can be no reason for the rule of look and listen beyond the rule of ordinary care, and no such obligation rests upon one thus ignorant as upon one who does know of or can see its existence, and the reason for the rule fails."

The court then quoted from the case of *McClure v. Southern Pac. Co.,* 41 Cal. App. 652 (183 P. 248), where it was held:

"Where a railroad track was obscured because it was constructed in a narrow cut and was covered with dirt at the crossing, and the position of crossing sign was such that it could not be seen by the occupants of an automobile, who were strangers unaware of railroad's existence, the question whether their failure to stop, look and listen constituted contributory negligence was for the jury."

In the Harwood case there is a valuable note on the subject of "Travelers's Ignorance of Existence of Railroad Crossing as Affecting Liability for Injury," and the annotator says:

"A traveler who is ignorant of the existence of a railroad crossing, and, in the exercise of ordinary care on the highway, fails to discover a crossing in time to avert accident, can not be deemed guilty of negligence as a matter of law because of a failure to stop, look and listen."

■ From the foregoing cases, it is apparent that, before the operator of a motor vehicle can drive his motor car upon a railroad crossing without being

fairly charged with negligence, *he must have used ordinary care to avoid the danger.* This doctrine is enunciated by text-writers and sanctioned by courts, and to it we unqualifiedly subscribe.

■ Having in mind this rule, let us notice the facts in the instant case. In the first trial of the case, the plaintiff was nonsuited on his own testimony, which, in substance, was that he failed to look for danger while pursuing his journey. In this, a second action based on the same accident, he testified before the trial court that he did keep a lookout for danger. As a result of the modified testimony, the cause was submitted to the jury and a verdict was found for the plaintiff. This is not a case of an unmarked crossing, hidden from view by mist, fog, rain, snow or darkness. The presence of the railroad was obvious to any person "reasonably using his ordinary powers of observation." The collision occurred in broad daylight, when the atmosphere was clear, the sky cloudless, and the sun shone brightly from a point about two and one-half hours above the western horizon. The railway crossing was marked with the usual sign of danger, "Stop, Look and Listen." While there is testimony tending to show that the railroad track at the crossing was obscured by vegetation, such as grass, shrubs, and blackberry vines, the physical facts shown by Exhibits 14, 15 and 16, being photographs taken on May 23, 1929, indicate that if the plaintiff had looked to the right as he approached the track he could have seen the railroad station at Garden Home, and the trestle, the embankment, the railroad track and the crossing as well. Exhibit 14, a photograph taken at a point two-tenths of a mile back from the crossing, shows the defendant's station at Garden Home, the trestle sup-

porting the railroad track, and the warning sign. The testimony shows that the railroad trestle "right under the depot" was twenty-two feet in height, "that is, from the ground up to the base of the rail," and that the center line of track at the depot was 5.8 feet higher than the track was at the crossing, which would make the level of the ground under the trestle 16.2 feet below the level of the ground at the crossing. The facts disclosed by these exhibits, which show the topography of the lands at and in the vicinity of the railroad crossing, conclusively establish that the plaintiff could have seen the place of danger in time to avoid the collision. As to the value of these photographs, we note the following from 22 C. J., § 1115:

"Photographs and pictures, it is said, stand on the same footing as diagrams, maps, plans, etc., and as a general rule whenever it is revelant to describe a person, place or thing, photographs or pictures are admissible for the purpose of explaining and applying the evidence and assisting the court or jury in understanding the case. Indeed it has been said that the practice of admitting photographs in evidence in all proper cases should be encouraged, as such evidence usually clarifies some issue and gives the jury and the court a clearer comprehension of the physical facts than could be obtained from the testimony of witnesses."

In the recent case of *Morser v. Southern Pacific Co.*, 124 Or. 384 (262 P. 252), this court, speaking through Mr. Justice Belt, said:

"It may well be argued, in view of the weather conditions prevailing that the train was not in 'plain' sight, but it is impossible to conceive that such a large object could not have been seen by the plaintiff, who says that he looked when seven feet from the track. If the fog was dense, there was all the more reason for the exercise of a higher degree of care. It is fundamental that the degree of care should be commensurate

with the danger involved. \* \* \* As stated in *Olds v. Hines,* in disposing of petition for rehearing, 95 Or. 591 (188 P. 716):

" 'It is utterly unreasonable and contrary to the very facts upon which he relies for recovery, to say that the train was not in sight. Such oral declaration, when compared with the actual, admitted physical happenings present in the case, are nullities and are to be treated as if they had not been uttered.' "

Concluding, the justice says:

"We are not prepared to renounce the law as declared in *Slusher v. Great Southern R. Co.,* 107 Or. 587 (213 P. 420); *Olds v. Hines,* supra, and in *Cathcart v. Oregon-W. R. & N. Co.,* supra."

The following excerpt from 22 R. C. L., "Railroads," pp. 1056, 1057, seems to the writer to be clearly applicable to the situation here presented:

"All the authorities support the proposition that where the evidence conclusively shows that a person injured at a railroad crossing must have seen or heard the approaching train if looking or listening, his testimony that he looked and listened and did not see or hear it is of no probative force and will be disregarded, even where such testimony is corroborated. \* \* \* Such testimony is incredible as matter of law. In order to have this effect, however, the evidence must be conclusive."

In view of the doctrine hereinbefore announced, and in adherence to the prior decisions of this court, it follows that the judgment rendered by the court below is reversed and the action dismissed.

Bean, C. J., Belt and Rossman, JJ., concur.