Argued March 18; affirmed April 22, 1947

# VAN ZANDT *v.* GOODMAN ET AL.

(179 P. (2d) 724)

*E. K. Oppenheimer,* of Portland (with Wilbur, Beckett, Oppenheimer, Mautz & Souther, of Portland, and Charles T. Seivers, of Oregon City, on brief), for appellant.

*Glenn R. Jack,* of Oregon City (Butler & Jack, of Oregon City, on brief), for respondent.

Before Rossman, Chief Justice, and Lusk, Belt, Bailey, Hay and Winslow, Justices.

LUSK, J.

The defendant Goodman appeals from a judgment in favor of the plaintiff in a personal injury action growing out of a collision between automobiles.

The accident occurred on the afternoon of August 14, 1945, in Clackamas County on the Superhighway, a four lane arterial highway connecting Oregon City and Portland. Plaintiff was a guest passenger in a southbound automobile driven by the defendant Cooper. The defendant Goodman, accompanied by his wife and two small children, was driving his car north to Portland. The vehicles collided at an intersection when Cooper was in the act of making a left-hand turn. Plaintiff sued both Cooper and Goodman. The court, being of the opinion that the evidence failed to disclose gross negligence on the part of Cooper, granted him a nonsuit. The case against Goodman was submitted to the jury, which returned a verdict for the plaintiff. The sole assignment of error is based upon the court's denial of a motion for a directed verdict made by Goodman, who, for convenience, will hereinafter be referred to as the defendant.

The Superhighway runs north and south and is intersected by Jennings Avenue at right angles. Railroad Avenue, which runs in a generally northwesterly and southeasterly direction, comes into the east side of the Superhighway and the south side of Jennings Avenue at an acute angle. About fifty feet distant to the southwest, it is paralleled by the tracks of an interurban railroad, which cross the Superhighway. There

are railroad crossing signs on either side of the car tracks; a wigwag which operates when streetcars approach the Superhighway; and, according to one witness, an overhead blinker light at the intersection. Photographs of the scene, however, indicate that there is no such blinker light. Entrances to the Superhighway are guarded by stop signs.

The four lanes of the Superhighway are each ten feet in width, the inner lanes being separated by double yellow lines between which are laid concrete markers. Approaching the intersection from the north there is a slight grade which limits visibility to the south for one at the bottom of the grade. But, as the intersection is neared, there is an unobstructed view for at least three-quarters of a mile. Approaching the intersection from the south the view is unobstructed. The shoulder on the east side of the Superhighway, both north and south of the intersection, is about ten feet in width and is hard surfaced.

Traffic on the Superhighway is very heavy. On the other two roads mentioned it is comparatively light.

Both the plaintiff and the defendant were rendered unconscious in the accident and all memory of it was erased from their minds. Of the persons immediately involved only Cooper and Mrs. Goodman were able to give testimony which threw light on the circumstances of the collision.

The day was clear, visibility good, and the pavement dry. There were no automobiles in the immediate vicinity other than Cooper's and the defendant's.

Cooper, called by plaintiff as an adverse witness, testified that he and the plaintiff left their common place of work in Portland for Oregon City, where they resided, shortly after five o'clock in the afternoon. On

the way they decided to go first to a town called Gladstone, which they would reach by way of Railroad Avenue. Cooper's speed never exceeded thirty-five miles per hour. When he was about 400 feet from the intersection in question he reduced his speed by taking his foot off the accelerator. At about 150 feet from the intersection he extended his hand and arm in signal for a left-hand turn, and kept it so extended until he reached the intersection. His intention was to cross the highway into Railroad Avenue. We quote from his testimony:

"Q As you came up to that intersection of Jennings Avenue, then what did you do?

"A I give my lefthand signal approximately 150 feet before the intersection and begin to drift down to make the turn.

"Q Which lane of traffic did you approach that intersection in?

"A In the inside lane going south.

"Q What did you observe about traffic approaching from the south?

"A There was one car coming from the south, I noticed, and as I approached the intersection I gave a judgment of approximately 250 feet before I turned in.

"Q Then what did you do?

"A I drifted down then. We were approaching then about fifteen miles an hour, and the last I knew before the impact I was just crossing the yellow line into the outside lane of the northbound traffic.

"Q What happened?

"A Well, the accident occurred right there.

"Q What part of your car came in contact with what part of the other car?

"A My car was struck on the righthand side frontward and back towards the door.

\* \* \*

"Q Now, I notice you said at the time you approached the turn you observed one car coming from the south, at the time you were on the center line or approaching the center line,—that is the dual center line dividing the four lanes. About how far away was that car, Mr. Cooper?

"A I judge it was about 250 feet.

"Q And did you stop from that time on until the impact?

"A I did not."

At another point in his examination, Cooper testified that he saw the Goodman car when he was "making the turn", and headed in "kind of a southeasterly direction", and he judged then that the Goodman car was "at about 250 feet".

He was unable to estimate the speed of the Goodman car. He saw it first at the time he gave his signal 150 feet from the intersection, but would not say how far away it was at that time. On cross-examination he stated more than once that when he was crossing the double lines in the center of the highway the Goodman car was 250 feet to the south. He further testified that he traveled ten feet from that point to the center of the easterly half of the highway where the collision occurred.

The defendant testified that he was driving in the outer lane at a speed of forty miles an hour. As stated, he remembered nothing of the accident. Mrs. Goodman, who was riding on the front seat with her husband, testified that their car was being driven in the outer lane and that their speed was thirty-five miles per hour; that they slowed down for the railroad track and then resumed their speed, and did not again slacken it. She said that the Cooper car came suddenly towards them from the far left lane; that she "exclaimed" to

her husband to turn the wheel and he turned it to the right; that she did not know whether he noticed the other car or whether he turned the wheel because of her exclamation, or because he also saw the car; that she could not tell the speed of the Cooper car and saw no signal given by its driver.

The plaintiff had no recollection of anything that occurred on the day of the accident.

Harvey Stone, a boy fifteen years of age, was walking east on Jennings Avenue toward the Superhighway and saw the collision from a distance of about 150 feet. He testified that the Cooper car "seemed to cut over in front of the other one. There was a short skid of brakes and tires, and they hit." The cars seemed to bounce, one turned, and both went in a somewhat northerly direction. The time which elapsed between the car cutting over and the impact was so brief that he could not estimate it.

Leo Vennker was about to enter a grocery store at the northwest corner of the intersection. He testified that he heard brakes applied and looked around just as the cars came together on the yellow line dividing the two northbound lanes.

The following additional facts are shown by the testimony of two police officers who came to the scene before the cars were moved: The Goodman car was heavily damaged, almost squarely across the front. Most of the damage to the Cooper car was on the right front fender and grill, and from there back toward the door.

No skid marks were found on the pavement. There was debris on the right-hand northbound lane, directly opposite Jennings Avenue, scattered on both sides of the yellow line. One of the officers testified that the cars were approximately twenty feet northeasterly

from the point of impact. The other, who took measurements, testified that the Cooper car was fifteen feet from the east edge of the pavement and parallel to Jennings Avenue, while the left rear corner of the Goodman car was about nine feet southwest of the right rear of the Cooper car, the Goodman car being headed towards Railroad Avenue. Some of the testimony about the position of the cars is obscure because the witness and counsel referred to a map which is not in evidence. The trial judge and the jury probably understood this testimony, but we do not.

The foregoing, we believe, is a fair summary of all the evidence bearing on the question of negligence and proximate cause.

The charges of negligence against the defendant are: (1) Excessive speed under the circumstances; (2) failure to keep his automobile under control; (3) failure to apply brakes and slacken his speed so as to permit the Cooper car to cross the highway; (4) failure to sound the horn; (5) failure to keep a lookout.

The question for decision is whether there is any substantial evidence of negligence on the part of the defendant, which alone, or in conjunction with the negligence of Cooper, was the proximate cause of the plaintiff's injuries.

The following statutory provisions applied to the defendant and Cooper in the operation of their automobiles:

"(a) No person shall drive a vehicle upon a highway at a speed greater than is reasonable and prudent, having due regard to the traffic, surface and width of the highway and the hazard at intersections and any other conditions then existing.

"Nor shall any person drive at a speed which is greater than will permit the driver to exercise

proper control of the vehicle and to decrease speed or to stop as may be necessary to avoid colliding with any person, vehicle or other conveyance on or entering the highway in compliance with legal requirements and with the duty of drivers and other persons using the highway to exercise due care; provided, that this provision shall not be construed to change the rules of pleading and evidence relating to negligence and contributory negligence." § 115-320, O. C. L. A., as amended by Ch. 458, Oregon Laws, 1941.

"The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, and if any pedestrian may be affected by such movement shall give a clearly audible signal by sounding the horn, and whenever the operation of any other vehicle may be affected by such movement shall give a signal as required in this section plainly visible to the driver of such other vehicle of the intention to make such movement.

"(b) * * * Whenever the signal is given by means of the hand and arm, the driver shall indicate his intention to turn to the left by extending his hand and arm horizontally from and beyond the left side of the vehicle * * *

"The signal * * * shall be given continuously during the last 50 feet traveled by the vehicle before turning." § 115-335, O. C. L. A.

"Vehicle turning left at an intersection. The driver of a vehicle within an intersection intending to turn to the left shall yield to any vehicle aproaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard, but said driver having so yielded and having given a signal when and as required by law may make such left turn, and other vehicles approaching the intersection from said opposite direction shall yield to the driver making the left turn." § 115-337 (c), O. C. L. A.

█ █ The court has many times declared that the right of way conferred by statute is not inflexible, nor absolute, nor a right which may be exercised without due regard to the attendant circumstances and the safety and rights of others. *Black v. Stith,* 164 Or. 117, 121, 100 P. (2d) 485; *Keys v. Griffith,* 153 Or. 190, 198, 55 P. (2d) 15; *Stryker v. Hastie,* 131 Or. 282, 287, 282 P. 1087; *West v. Jaloff,* 113 Or. 184, 200, 232 P. 642, 36 A. L. R. 1391. The requirements of § 115-320, O. C. L. A., as amended, known as the "basic rule", were intended, as Mr. Justice RAND said in *Stryker v. Hastie,* supra, "to curb recklessness and to prevent careless driving upon the part of every person driving a motor vehicle upon any public highway. They are applicable to drivers having the right of way as well as to those not having it."

█ By the provisions of § 115-337 (c) a driver within an intersection intending to make a left-hand turn must "yield to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard". The principles of construction which we have adopted with reference to Subd. (a) of § 115-337, prescribing the right of way as between vehicles approaching intersections on different streets or highways, are applicable to the subdivision of the same statute now under consideration. As to the former subdivision it is the doctrine of this court that "if a traveler, not having such right of precedence, comes to the crossing and finds no one approaching it upon the other street within such distance as reasonably to indicate danger of interference or collision, he is under no obligation to stop or to wait, but may proceed to use such crossing as a matter of right." *Stryker v. Hastie,* supra, 131 Or. 288. To the same effect see *Hansen v. Bedell Co.,* 132 Or.

332, 337, 285 P. 823; *Ramsdell v. Frederick,* 132 Or. 161, 174, 285 P. 219; *Frint v. Amato,* 131 Or. 631, 639, 284 P. 183; *Red Top Taxi Co. v. Cooper,* 123 Or. 610, 613, 263 P. 64; and *Casto v. Hansen,* 123 Or. 20, 24, 261 P. 428. Similarly, there can be no hard and fast rule for determining whether an approaching vehicle not in the intersection is "so close thereto as to constitute an immediate hazard". The question must be determined by a consideration of the relevant factors—the distance of the approaching vehicle from the intersection; the width of the crossing; the speed of the respective vehicles; visibility; other traffic, if any, etc. In the view of these and all other pertinent circumstances, the trier of the facts must decide whether the driver making the left-hand turn was justified as a reasonably prudent person in believing that he could safely pass through the intersection in front of the oncoming car. As the court said in *Carlin v. Haas,* 124 Conn. 259, 264, 199 Atl. 430:

> "Where two cars approach an intersection proceeding in opposite directions and the driver of one intends to turn to his left around the center of the intersection to enter a street which crosses the one upon which he is proceeding, the risk of collision arises when he turns to enter that street. If at that time a car is approaching from the opposite direction under circumstances which to a reasonable man would indicate the danger of collision, the approaching car has the right of way."

■ Generally, the question whether or not a motorist violated a statute with respect to right of way is one of fact, as the numerous cases decided by this court illustrate. See, Anderson, An Automobile Accident Suit, 859, § 702; 937, § 774; 970, § 808; Huddy, Cyclopedia of Automobile Law, 237, § 142. The evidence

may be such, however, that the court will be warranted in declaring one or the other driver guilty of negligence as a matter of law, as, for example, in *Parrack v. Mc-Gaffey,* 217 Iowa 368, 251 N. W. 871.

■ In the instant case defendant argues that Cooper's violation of the right of way is established as a matter of law. That may be, but to say this is not necessarily to exonerate the defendant. See, e. g., *Parrack v. McGaffey,* supra, a case cited by the defendant. And we think that, tested by the legal principles to which we have adverted, the question whether the defendant exercised reasonable care under the circumstances was one of fact for the jury and not of law for the court. The jury could have found that, notwithstanding Cooper violated the right of way, the defendant failed to "operate his car as a reasonably prudent person, with the knowledge that he had the right of way, would operate his car under like circumstances". *Jackson v. Brown,* 106 Conn. 143, 146, 137 Atl. 725, 726. The jury would have been warranted in finding that the defendant was not keeping a proper lookout and that he did not have his car under control. There was evidence that Cooper had his hand extended in signal for a left-hand turn for a distance of 150 feet before he started to turn, and that he had reduced his speed as one would be expected to do in making such a turn. He was approaching the intersection at a speed of fifteen miles per hour, and, so far as appears, gave no indication of an intention to stop before crossing the highway. The defendant, the jury might say, should have seen the signal and governed his conduct accordingly. It could have been found that, in view of the possibility of collision which presented itself, it was the duty of the defendant in the exercise of reasonable care to apply his brakes and bring his car under control

before Cooper started to cross the intersection. Instead, he continued straight ahead at a speed of forty miles an hour, which, under the circumstances and in view of the command of the basic rule, the jury may have deemed excessive.

The argument of counsel for defendant in opposition to these views may be summarized as follows: The only direct evidence in the case as to the relative positions of the cars is Cooper's testimony that when he was on the center strip the defendant's car was 250 feet to the south. Cooper then had ten feet to travel to the point of collision; the defendant twenty-five times as far. As Cooper's speed, according to his testimony, was fifteen miles per hour, the defendant must have traveled at the impossible speed of 375 miles an hour in order to reach the point of collision at the same time that Cooper's car reached it. Therefore, under the so-called "incontrovertible physical facts rule", Cooper's testimony as to the position of the defendant's car must be rejected, and, as the brief says, "no other figure can be adopted for the reason that no one can say exactly how far away the car was when the observation was made." With Cooper's testimony as to this point taken out of the case, it is contended that an analysis of the remaining evidence, based upon the respective speeds of the vehicles, leaves room for no other conclusion than that at the time Cooper turned, the defendant's car was, by the most liberal estimate, only fifty-four feet or thereabouts from the point of impact, and that it was impossible for the defendant, travelling at the rate of forty miles an hour, to stop his car within that distance and avoid a collision. And it is said:

"It follows from a consideration of the Oregon statute and these decisions (referring to cases cited

in the brief) that the assumption that Cooper * * * made a proper arm signal indicating a turn is of no avail to the plaintiff in this case if Cooper in making his turn violated the law of this state and turned into the path of Goodman at a time when Goodman was so close as to constitute an immediate hazard.''

Counsel for defendant say further:

"It may be conceded for the purpose of this argument that Goodman was charged with the duty of keeping a reasonable lookout with respect to the movements of the Cooper car *from the time that the latter crossed the center lines of the highway headed toward the southeast.*" (Italics added)

■ It is, of course, the rule that a verdict or finding cannot be based on evidence which is opposed to established physical facts. 32 C. J. S., Evidence, 1125, 1126, § 1042. Typical cases are those arising out of collisions at railroad crossings such as our own decisions, cited by the defendant, in *Conn v. Oregon Electric Ry. Co.,* 137 Or. 75, 300 P. 342; *Morser v. Southern Pacific Company,* 124 Or. 384, 262 P. 252; and *Olds v. Hines,* 95 Or. 580, 187 P. 586, 188 P. 716. In this class of cases it is held that "where the evidence conclusively shows that a person injured at a railroad crossing must have seen or heard the approaching train if looking or listening, his testimony that he looked and listened and did not see or hear it is of no probative force and will be disregarded, even where such testimony is corroborated.'' *Conn v. Oregon Electric Ry. Co.,* supra, 137 Or. at p. 87, quoting from 22 R. C. L., Railroads, pp. 1056, 1057.

The principle was applied in *Bauer v. Wood,* 236 Mo. App. 266, 154 S. W. (2d) 356, a case something like this, much relied on by the defendant. The plaintiff there was a driver making a left-hand turn, though

not at an intersection. Apparently he gave no signal. He testified that when he made his turn the defendant's car was at least 450 feet away. There was evidence that the defendant's car was traveling at a speed of sixty miles an hour and that the plaintiff's speed was ten miles per hour. Mathematical computation demonstrated that on the basis of this testimony the defendant's car would have been about 200 feet from the collision when it occurred, and the court held that the testimony must be disregarded, saying that "neither the court nor the jury can enter into the realm of speculation and say that although plaintiff's evidence presents an impossible situation, we will alter and change and coordinate the time and distance elements as shown by plaintiff's evidence in order to make them reconcile with a physical possibility favorable to plaintiff's case." While various charges of negligence were made in the complaint, on the trial the plaintiff abandoned them all except the charge that the defendant violated the humanitarian rule. The holding on appeal was that the evidence did not present a submissible case, because "the defendant did not owe plaintiff any duty to slacken the speed of or swerve his automobile until the Bauer car (plaintiff's) was actually in or entering a position of imminent peril", and that there was "a total lack of evidence to show when such 'imminent peril' began." Without intending to intimate disagreement with the view the Missouri court took of the plaintiff's testimony, it should be observed that, where it is necessary to bring the case within the narrow limits of the humanitarian rule, there being no other charge of negligence, the question of the sufficiency of the evidence may be quite different from that presented in a case involving charges of negligence such as those with which we are here concerned.

■ It is said that "the physical facts rule cannot come into play with respect to the position, speed, etc., of movable objects, if the facts relative to speed, position, etc., must be established by oral evidence" or "where it is necessary to make estimates or measurements, or to start with an assumption of the existence of a fact". Anderson, An Automobile Accident Suit, 707 § 571; 708, § 572. See cases cited in the notes and *Duling v. Burnett*, 22 Tenn. App. 522, 124 S. W. (2d) 294.

In *Gilmore v. Orchard*, 177 Wis. 149, 151, 187 N. W. 1005, Mr. Justice Rosenberry said upon this subject:

> "Some statements made by the plaintiff in his testimony are inconsistent with the facts as found by the jury, but the statements made by the plaintiff are not physical facts. They are statements made by him of the facts as they appeared to him, and it may well be that the shock of the accident left his mind confused as to his exact position or as to the exact sequence of events immediately preceding the collision."

If the only evidence in the case as to the distance between the two cars at the time that Cooper turned was his testimony that the Goodman car was then 250 feet away, it is possible that such evidence would have to be disregarded. But Cooper also testified that, "as I approached the intersection I gave a judgment of approximately 250 feet before I turned in", and, on being asked, "Then what did you do?" he said: "I drifted down then. We were approaching then about fifteen miles an hour, and the last I knew before the impact I was just crossing the yellow line into the outside lane of the northbound traffic." Furthermore, while he testified that he traveled ten feet from the center line to the point of collision, the distance was

in fact greater because he was not proceeding straight across the highway but at an angle to the southeast of approximately forty-five degrees.

■ We are of the opinion that the court would not be justified in ignoring Cooper's first testimony on this question and binding the plaintiff by his later statements, which, by hypothesis, are absurd. At best, this sort of testimony given by the driver of an automobile is, of necessity, the merest approximation. This is because both vehicles are in motion and approaching each other at high rates of speed. Even at what we have come to think of as the comparatively slow pace of fifteen miles an hour, an automobile will cover twenty-two feet in a second, while at forty miles an hour its speed is about sixty feet per second. If Cooper's average speed was twenty miles an hour from a point 150 feet from the intersection (where he said he first saw the Goodman car) until the collision, he would have covered the intervening distance in about six seconds. The speed of the Goodman car was at least twice as great. Under those circumstances, it might well be that the best judgment an honest witness could have as to his position when he attempted to estimate the distance of the other car was that which Cooper first expressed, namely, that he did so as he approached the intersection.

■ In any event, we have testimony that Cooper gave a signal for a left-hand turn when 150 feet from the intersection and maintained it until he turned. When he gave the signal he saw the Goodman car, and Goodman, it may be assumed, could see his car. It was Goodman's duty to have seen the signal, at least during the last fifty feet of Cooper's progress toward the intersection. From the evidence given by Mrs. Goodman it could be inferred that the defendant was paying no attention whatever to the Cooper car and did nothing

to avoid a collision until the very moment of its occurrence. And this, we think, the jury might find constituted negligence.

Now the argument on behalf of the defendant which we have already referred to is that he was not required to take any precautions until Cooper started to cross the highway. The basis of this contention is that the defendant had the right to assume that Cooper would obey the law, and to continue to rely upon that presumption until he knew, or should have known, the contrary. But whether or not the defendant should have become aware of facts that would indicate to a reasonably prudent driver in his position that Cooper was going to attempt to take the right of way is not, under the evidence here, a question of law, but of fact. For the court to say that he was justified in proceeding as though there were no other automobiles on the highway, and no reasonable likelihood of a collision, would be to ignore the basic proposition that the requirement of due care in the operation of an automobile applies as well to the motorist who has the right of way as to him who does not. As Mr. Justice Cardozo said when a member of the Court of Appeals of New York: "The supreme rule of the road is the rule of mutual forbearance." *Ward v. Clark,* 232 N. Y. 195, 198, 133 N. E. 443.

■ The right to indulge in the presumption that another will not violate the law does not relieve the one indulging that presumption from the duty of exercising reasonable care for the safety of others. As the court said in *Richards v. Neault,* 126 Me. 17, 20, 135 Atl. 524:

" * * * each saw the other approaching and, notwithstanding each had a right to presume the other would obey the law, each was bound to exercise that degree of care that a reasonably prudent man

would use under like circumstances to avoid injuring the other, and to exercise that degree of care under the circumstances as they arose.''

For other cases enunciating the same principle see the annotations in 47 A. L. R. 613, 37 A. L. R. 509, 21 A. L. R. 988.

In support of their contention counsel cite the following cases: *Black v. Stith,* 164 Or. 117, 100 P. (2d) 485; *Hunsaker v. Pacific Northwest Public Service Co.,* 143 Or. 583, 20 P. (2d) 433; *Lovett v. Gill,* 142 Or. 534, 20 P. (2d) 1070; *Jamieson v. Taylor,* 1 Wash. (2d) 217, 95 P. (2d) 791; *Bauer v. Wood,* supra. All refer to the presumption that the law will be obeyed; but they are not, in our judgment, authority for the conclusion that the absence of negligence on the part of the defendant here has been established as a matter of law, or that simply because the defendant may have had the right of way he may not have been negligent in other respects. Thus, in the Hunsaker case, the court held that the trial judge should have instructed the jury that a streetcar of the defendant streetcar company had the right of way over an automobile driven by another defendant; but it was not held that other questions relating to alleged negligence of the streetcar company were thereby foreclosed. And in *Jamieson v. Taylor,* supra, the court seems to have taken a different view than that urged upon us as to the duty of the defendant when it said:

''In the exercise of due care, the respondent was not required to anticipate that appellant would make a left turn until he had complied with the law relative to the giving of a signal indicating that he was going to turn at the intersection. She had the right to assume that appellant would obey the rules of the road and yield to her the right of way.''

The principles of law applicable to a case of this kind are well settled, and we think it would serve no useful purpose to discuss the numerous other decisions from this and other jurisdictions cited in the defendant's brief. In our opinion, there is evidence in the record to support the judgment, and it is, therefore, affirmed.