Argued January 18, reversed and remanded March 21, 1956

# KENNEDY *v.* FARMERS COOPERATIVE CREAMERY

295 P. 2d 197

*Philip Hayter,* of Dallas, argued the cause for appellant. On the brief were E. Earl Feike and Paul R. Harris, of Portland.

*Asa L. Lewelling,* of Salem, argued the cause and filed a brief for respondent.

Before WARNER, Chief Justice, and TOOZE, LUSK and BRAND, Justices.

BRAND, J.

This is an action for damages growing out of a collision between two cars within a highway intersection. The plaintiff was driving in a southerly direction on Highway 99W, a main thoroughfare. The defendant, by his agent Newby, was driving a van-body truck in a northerly direction. The defendant, intending to drive to the west on the intersecting street, turned left in the intersection. The front bumper of the defendant's truck collided with the left front side of plaintiff's automobile. Plaintiff's left headlight was undamaged. The collision took place on the west side of Highway 99W. There was a verdict and judgment for the defendant and plaintiff appeals.

The weather was foggy and the visibility limited. Plaintiff was going not more than 35 miles an hour.

The evidence presented a jury question. The only issues presented on appeal relate to instructions given or refused.

By his first assignment the plaintiff contends that the court erred in giving a lengthy instruction on the duties and rights of the parties in or near an intersection. We shall set forth only those portions of the instruction which relate to the alleged error. The instruction was, in part, as follows:

"Now, it is also charged in the complaint that the—in Subdivision (B), that although the defendant was operating its motor truck within an intersection intending to turn to the left, defendant carelessly and negligently failed to yield to the motor vehicle being operated by plaintiff approaching from the opposite direction and was within the intersection or so close thereto as to constitute an immediate hazard. Section 115-337 O.C.L.A., Subdivision (c), reads as follows: 'The driver of a vehicle within an intersection intending to turn to the left shall yield to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard * * *.'
* * * * *
"* * * and if you find that upon approaching the intersection there was no car within the intersection and none approaching so close as to a reasonably prudent man would constitute an immediate hazard, then Mr. Newby would have the right to proceed. But on the other hand, if you find that when Mr. Newby approached this intersection there was a car within the intersection or one approaching so close as in the judgment of a reasonably prudent person would constitute an immediate hazard, then it was his duty to wait and yield the right of way to the oncoming car. * * *"

■ The defendant contends that the exception taken by plaintiff was insufficient to raise the question on

which plaintiff relies for reversal. The exception taken reads as follows:

> "Plaintiff excepts to the modification of the statutory rule of the statutory duty of the defendant to yield to the plaintiff if he was approaching the intersection or so close as to be an immediate hazard or within the intersection on the ground that the modification relaxed the duty required of the defendant and in effect applied the right of way rule thereto. On the further ground that no evidence has been introduced on behalf of the defendant that he had a right to rely under the circumstances in making the crossing in question because his own evidence is to the effect that before invading our lane he did not see whether or not he could make that movement in safety."

The exception was not aptly phrased, but we think it was sufficient to call to the attention of the trial judge the obvious fact that the instruction did relax the requirements of the pertinent statute. The defendant states the contention of the plaintiff with clarity, as follows:

> "The point which plaintiff apparently attempts to make is that the statute to which we have referred imposed a duty upon defendant's driver to yield the right of way under certain conditions when he was within the intersection, whereas the portion of the instruction immediately above quoted imposed certain duties upon defendant's driver as he approached the intersection. In other words, plaintiff's counsel makes the distinction between 'within the intersection' and 'approaching the intersection'."

■■ We now turn to a consideration of two subsections of ORS 483.202. Subsection (1) provides that

> "Drivers, when approaching highway intersections, shall look out for and give right of way to vehicles on the right, simultaneously approaching

a given point, whether such vehicle first enters and reaches the intersection or not. * * *"

These provisions clearly relate to the duties of automobiles approaching a given point at right angles. The duty imposed upon a driver relates to the time when he is approaching an intersection. It is at that time that he is to look out for and give right of way to vehicles on the right. When the driver is *approaching* the intersection the only car on his right simultaneously approaching a given point would be one in the intersecting street. To illustrate, a car going north and approaching an intersection would be required by this subsection to lookout for and give right-of-way to a car going west and approaching a given point. The westbound car would be on the right. However, if the northbound car was approaching the intersection and the other car was southbound on the same street, the southbound car would not be on the right of the northbound car. The southbound car could not be on the right of the northbound car until the northbound car had *entered* the intersection and turned to the west in front of the southbound car. Hence we see that subsection (1) did not apply in the case at bar. This conclusion becomes clear when we consider subsection (3) of ORS 483.202 which expressly provides for the case of cars proceeding in opposite directions. The duty of the northbound driver, the defendant here, was defined as follows:

"The driver of a vehicle within an intersection intending to turn to the left shall yield to any vehicle approaching from the opposite direction which is within the intersection or so close thereto as to constitute an immediate hazard. * * *" ORS 483.202(3).

The northbound defendant's duty with reference to the southbound plaintiff applied when defendant was

"within the intersection." It was then, if he intended to turn left, that he was required to yield to any vehicle approaching from the opposite direction under the conditions specified in the statute. Subsection (3) was controlling in the case at bar and subsection (1) was inapplicable. The error in the instruction given inheres in the fact that after instructing the jury as to the pertinent statute (subsection (3)) the court construed that section as if the only duty imposed on defendant was to look out for the southbound plaintiff when defendant was *approaching* the intersection. The jury was told, in substance, that if at the time defendant was approaching the intersection the plaintiff was neither within the intersection nor approaching it so closely as to constitute an immediate hazard, then defendant "would have the right to proceed." The instruction in effect eliminated from the statute the statutory duty of defendant when *within* the intersection to yield to the plaintiff, if at that time plaintiff was within the intersection, or so close as to constitute an immediate hazard. The words "when approaching" an intersection are somewhat elastic in meaning. On consideration of particular circumstances one might reasonably be found to be "approaching" the intersection at various distances therefrom, and looking out for a southbound car "when approaching" would by no means give assurance that it would be safe to turn left when within the intersection.

In *Lawrence v. Goodwill,* 44 Cal App 440, 186 P 781, the court considered a statute which required motorists to limit speed "when approaching" an intersection. The court said:

"* * * Without being told by the court that it was their duty to do so, the jury would know, if they knew enough to act as jurors, that, before

they could reach a just conclusion upon the question whether the operator was guilty of negligence in not reducing the speed of his machine to the limit prescribed on approaching an intersection, they would have to determine, from all the circumstances of the case and the conditions surrounding the intersecting way, whether he diminished his speed to the required rate at a safe and proper distance from the point of intersection. * * *"

See also, *Lee v. Hoff*, 163 Or 374, 387, 97 P2d 715.

■ The trial court should not have attempted to instruct under the inapplicable provisions of subsection (1) and should not have relaxed the strict rule of subsection (3) of ORS 483.202.

Defendant contends that as a practical matter the plaintiff is "splitting hairs" in urging the distinction between the duty when approaching and the duty when within the intersection. Defendant relies upon the case of *Van Zandt v. Goodman et al.*, 181 Or 80, 179 P2d 724, where this court said:

"* * * The principles of construction which we have adopted with reference to subd. (a) of § 115-337 [now ORS 483.202] * * * are applicable to the subdivision of the same statute now under consideration. * * *" (ORS 483.202(3)).

The court did not intimate that the two sections were identical in meaning, but only that both sections should be construed as being subject to the qualification that

"* * * 'if a traveler, not having such right of precedence, comes to the crossing and finds no one approaching it upon the other street within such distance as reasonably to indicate danger of interference or collision, he is under no obligation to stop or to wait, but may proceed to use such crossing as a matter of right.' * * *"

It is significant that *Van Zandt v. Goodman* was a case of cars approaching from opposite directions, one of which turned left at an intersection. The court set forth at length the statutes which were applicable to the case. It included subsection 3 but made no mention of subsection 1 of ORS 483.202.

The prejudicial effect of the instruction to which exception was taken in the pending case becomes apparent from the evidence. Defendant's driver, on cross examination, testified as follows:

"Q. No, just before you left your northbound lane and went into the southbound lane, did you look to the north to see whether traffic was coming?
"A. That's a hard one to answer.

"Q. That's a hard one to answer. Did you testify as follows when your deposition was given:

"Q. Before you got over into the southbound lane, did you look again? Did you look to see if anything was coming?
"A. I don't remember whether I did or not.
"Did you so testify when your deposition was taken a few days ago? Would you like to see this?
"A. I saw it just a little bit ago, I am pretty sure.

"Q. The only question is, did you so testify, Mr. Newby?
"A. I did."

In this era of rapid transportation and congested traffic the dangers incident to left turns in or between intersections have been almost universally recognized. The reason for a strict enforcement of the statutes regulating left turns is well set forth in *French v. Utah Oil Refining Co.*, 117 Utah 406, 216 P2d 1002, as follows:

"When a statute prescribes that a turning vehicle must yield the right-of-way to another on a

straight-of-way when the latter is close enough to constitute a hazard, it anticipates the exercise of reasonable judgment on the part of the driver turning. However, a burden is placed on the driver making the turn as he has control of the situation, and if there is a reasonable probability that the movement cannot be made in safety then the disfavored driver should yield. The driver proceeding straight ahead has little opportunity to know a vehicle is to be turned across his path until the movement is commenced and in many instances, the warning is too late for the latter driver to take effective action. * * *''

The second and third assignments of error raise substantially the same question presented by the first. We deem it unnecessary to encumber the record with a discussion of the fourth and fifth assignments.

The judgment for defendant is reversed and the cause is remanded for a new trial.