Argued June 10, affirmed October 12, 1966

# HERMANN *v.* WOHLERS ET AL

419 P. 2d 45

*John B. Fenner,* Corvallis, argued the cause and filed a brief for appellant.

*Asa L. Lewelling,* Salem, argued the cause and filed a brief for respondents.

Before McALLISTER, Chief Justice, and GOODWIN, DENECKE, HOLMAN and *HAMMOND, Justices.

DENECKE, J.

Plaintiff's decedent was killed when a bicycle he was riding collided with a pickup truck owned by the defendant Pennick Dodge, Inc., and driven by its employee, the defendant Wohlers. In an action for damages for wrongful death the jury returned a verdict for the defendants. Plaintiff appeals.

The testimony was that the decedent and his wife were bicycling in Corvallis. In compliance with a stop sign they stopped at the entrance to a through street. The couple waited until a car had gone by and then the wife started across. At this time the jury could have found the truck to be about 150 yards away on the through street. At an unknown time after the wife had started, the decedent started across. The collision occurred in the truck's righthand lane. The defendant driver stated he saw the wife but not the decedent until the decedent was three or four feet away. He testified that the decedent drove his bicycle into the left fender of the truck. The wife testified the truck was "going not very fast"; the driver testified he was traveling approximately 30 miles per hour.

■ The plaintiff assigns as error the trial court's failure to strike the defendants' charges that the decedent was contributorily negligent in failing to keep a lookout and in failing to maintain control of his bicycle upon the ground that there was no evidence to support either charge. The jury could have found that the decedent ran into the side of the pickup. This would

---

* Hammond, J., did not participate in this decision.

be evidence of either improper lookout or control, or both. *Myhre v. Peterson*, 233 Or 470, 476-477, 378 P2d 1002 (1963).

A more difficult problem is presented by the assignments of error directed to the instruction given and the requested instruction not given upon the rights and duties of persons who have stopped at the entrance to a through highway and then proceeded into the through highway.

The trial court quoted ORS 483.202(2) to the jury as follows:

"The driver of any vehicle who has stopped or who has yielded the right of way as required by law at the entrance to a through highway shall yield to the other vehicles within the intersection or approaching so closely on the through highway as to constitute an immediate hazard. Having so yielded, such driver may proceed, and other vehicles approaching the intersection on the through highway shall yield to the vehicle so proceeding into or across the through highway."

After relating the statute to the facts of the instant case, the court concluded such instruction by stating:

"* * * In view of these and all other pertinent factors and circumstances you, as the jury, must decide whether a reasonably prudent person in the position of Hans Roeger [the decedent] would reasonably have been justified in believing that he could safely pass through the intersection at the time and place and under the circumstances shown by the evidence of this case."

The last portion of plaintiff's requested instruction was:

"Whether an approaching vehicle is so close as to constitute an immediate hazard is to be deter-

mined by considering whether a reasonable man having stopped at a stop sign before entering a through highway, and entitled to assume the approaching driver is maintaining proper lookout and control, could reasonably have believed that the approaching driver would not have time to notice him and to yield to him by slowing or stopping to avoid a collision."

The quoted instruction given is similar to a statement made in *Van Zandt v. Goodman*, 181 Or 80, 90, 179 P2d 724 (1947). That was a left-turn case and the governing statute was what is now ORS 483.202 (3). That statute is similar to the one here involved in that it requires the vehicle about to make a left turn to yield to vehicles constituting "an immediate hazard," and after so doing, the right of way is transferred to the left-turning vehicle.

■■ We adhere to the statement in *Van Zandt v. Goodman*, supra, and find the given instruction correct. If a reasonably prudent man does not believe he can pass through an intersection with safety, the vehicle threatening such safety is "an immediate hazard." *Euson v. Starrett*, 277 F2d 73 (7th Cir 1960), so construed an identical Illinois statute on this subject. The court stated: "Mere stopping is not sufficient; the driver must not proceed without determining that he can do so *safely*." (Emphasis added.) 277 F2d at 75.

The assignment of error directed at the failure to give the requested instruction requires us to construe the statute in more detail than we previously have. The identical statute has been adopted in many states; however, we have found few decisions touching upon the problem here raised.

The problem is twofold: What is the difference

between vehicles approaching which constitute "an immediate hazard" and other vehicles approaching which do not constitute an immediate hazard; and when is the driver desiring to cross the through highway to make this determination?

██ Answering the second issue first, we conclude that this determination of whether the approaching vehicles constitute an immediate hazard must be made at the time when the initially-disfavored driver is ready to proceed into the intersection. Pursuant to this conclusion, the driver may have stopped and yielded for some time while a string of cars has passed through the intersection upon the through highway. Vehicles which were not even in sight when the disfavored driver initially stopped may constitute an immediate hazard. This interpretation is consistent with the wording of the statute and is more conducive to safe vehicle operation than an interpretation setting an earlier time for determination. *Warren v. Watkins Motor Lines,* 242 SC 331, 130 SE2d 896, 901 (1963), and *Fusco v. Dauphin,* 47 Del 140, 88 A2d 813, 815 (1952), appear to support this proposition.

█ The other problem is: What approaching vehicles constitute an immediate hazard and what approaching vehicles do not constitute such a hazard? We cannot say that the latter class consists of vehicles approaching from such a distance and at such a speed that if they continued at such speed they would not enter the intersection until the driver crossing the through highway has cleared the intersection. The principal reason for rejecting such a conclusion is that the statute imposes a duty upon such vehicles to yield the right of way to the initially-disfavored vehicle after it has entered the intersection. This would

be unnecessary if the statute only contemplated vehicles traveling upon the through highway which, without stopping, slowing of yielding, would not enter the intersection until after it was cleared. The other reason is that the statute uses the phrase "immediate hazard," implying that the vehicles approaching from a greater distance or at a lesser speed also constitute a "hazard," but not of the "immediate" variety. Vehicles approaching from such a distance and at such a speed that without stopping, slowing or yielding the right of way they will not enter the intersection until it is cleared by the initially-disfavored vehicle, are not, in common speech, considered "hazards."

The interpretation of the Utah court in *Richards v. Anderson,* 9 Utah2d 17, 337 P2d 59 (1959), appeals to us as a reasonable one. At pages 20-21 the court stated:

"*  *  * There is, of course, no precise set of measurements by which an immediate hazard can be gauged. It must be judged on the basis of common sense in the light of existing circumstances. In reference to a similar situation the Supreme Court of Delaware has said that an 'immediate hazard' is created when a vehicle approaches an intersection on a favored street at a reasonable speed under such circumstances that, if the disfavored driver proceeds into the intersection it will force the favored driver to sharply and suddenly check his progress or stop in order to avoid collision. Conversely, if the disfavored driver has made his stop and deferred to all vehicles that would be required to go into a sharp or sudden braking to avoid collision, the cars far enough away have a clear margin to observe and make a smooth and safe stop are not an 'immediate hazard' and are required to yield to the driver already at the intersection."

■■ Based upon this criterion, the requested instruction was not a correct statement of the law. The requested instruction is that the vehicle approaching upon the through highway is not an immediate hazard if the approaching driver has time to notice the entering vehicle and slows or stops to avoid a collision. It fails to make the distinction made by the Utah court that if the favored driver is required to "sharply and suddenly check his progress or stop in order to avoid collision," the vehicle is an immediate hazard; however, the approaching vehicles do not constitute an immediate hazard if they are far enough away to "make a smooth and safe stop."

The refusal to give the instruction was not error.[1]

Affirmed.

---

[1] We do not intend to indicate that it is necessary under these circumstances for the trial court to do more than instruct the jury as to the applicable statute.